**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROMULO GREGORIO, | : | Civil No. 11-2771 (WJM) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| OSCAR AVILES, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> ROMULO GREGORIO, #225363, Plaintiff Pro Se
> Hudson County Correctional Center
> 35 Hackensack Avenue
> Kearny, NJ 07032

**MARTINI**, District Judge:

Plaintiff, Romulo Gregorio, who is currently incarcerated at Hudson County Correctional Center ("HCCC") in Kearny, New Jersey, filed a Complaint asserting violation of his rights under 42 U.S.C. §1983, arising from his incarceration. By Opinion and Order entered November 3, 2011, this Court dismissed the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, without prejudice to the filing of an amended complaint asserting a cognizable federal claim. Gregorio thereafter filed an Amended Complaint and a Second Amended Complaint. This Court has screened the Second Amended Complaint, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and will dismiss the pleading for failure to state a claim upon which relief may be granted.

## I.  BACKGROUND

Romulo Gregorio's initial Complaint was brought against Oscar Aviles ( Warden of HCCC), Lt. T. Montelon (corrections officer), R. Day, and Marcie Dressler (ombudsman), alleging violation of his constitutional rights under 42 U.S.C. § 1983, while he was incarcerated at HCCC.  Plaintiff asserted the following facts:

> This is a civil action authorized by 42 U.S.C. 1983 against the above defendants for unsanitary conditions, denial of religious freedom, unconstitutional policies and actions, and state and common law claims of emotional distress, all arising from defendants actions during the following dates December 27, 2009 through August 10, 2010. defendants refusal to provide plaintiff constitutional guarantees . . . .

> Defendants had plaintiff in a unlawful confinement lockdown and other unconstitutional prison policies, customs, practices and state and common law claims.

> These complaints and conditions have been grieved to all defendants by plaintiff, with no response and are futile at this prison level.

> The tables, air vents in rooms are not in any type of human living conditions, due to years of rust buildup.

> All defendants have violated the due process rights of plaintiff by engaging in illegal lockdown of the C 500 East Wing, which plaintiff is being housed for pretrial detainee.

> Defendants ha[ve] denied plaintiff the right to practice religious freedom.  The C-500-East tier is not allowed to attend any religious services.

> Defendants have violated plaintiff rights to receive outdoor recreation as well as on wing recreation, since December 2009 through August 2010 . . . .

The hudson county jail was locking plaintiff in without due process of law locking pretrial detainees in two man cells in excess of 22 hours a day 5 days a week and 32 hours 2 days a week.

Defendants disregard for human life and the rights of pretrial detainees to practice the custom of religion without the interference of a corporation.  Plaintiff is thus entitled to exemplary and punitive damages . . . .

Plaintiff is allowed one hour per week law library access on Tuesday only if its room, 10 people can only access the library out of 65 people once a week.

The court should find as a pretrial detainee charged with a ser[ious] crime as (homicide) affects plaintiff ability to prepare defense and a fair trial, to conduct legal research and have access to the courts. The court can eas[ily] determine this claim is handwritten.

Defendants and they malicious abuse of process to unlawfully lockdown plaintiff without due process, violate the constitutional rights of plaintiff.  Plaintiff has not violated any rules or regulations of the facility . . .

All defendants named in action violated clearly constitutional rights of plaintiff of which a reasonable person would have know[n], and are not entitled to qualified immunity.

(Dkt. 1 at 7-11) (paragraph numbers omitted).

In an Opinion entered November 3, 2011, his Court construed the Complaint as attempting to assert the following claims:  (A) the conditions of confinement at HCCC inflicted punishment without due process of law; (B) violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), see 42 U.S.C. § 2000cc-1; and (C) denial of the First Amendment right of access to courts.  This Court dismissed the conditions of confinement claim because Plaintiff's allegations did not satisfy the objective component of the claim, the plausibility standard, or the subjective

component of a conditions of confinement claim, under the Due Process Clause.  (Dkt. 2 at 6-10.)  This Court dismissed the Free Exercise and RLUIPA claims because Plaintiff's allegations did not show that Plaintiff made a request based on his own sincerely held religious belief, and Plaintiff did not allege facts showing that any defendant denied him a reasonable opportunity to pursue his faith.  (Id. at 10-11.)  This Court dismissed the First Amendment access to courts claim because Plaintiff's allegations did not show that he lost a chance to pursue a nonfrivolous or arguable legal claim, and that he has no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit.  Although this Court dismissed all the federal claims presented by the Complaint and declined to exercise supplemental jurisdiction over claims arising under state law, this Court granted Plaintiff leave to file an amended complaint asserting a cognizable federal claim.

On November 23, 2011, Plaintiff filed a First Amended Complaint.  (Dkt. 5.)  On May 3, 2012, he filed a Second Amended Complaint.  (Dkt. 6.)  The Second Amended Complaint is 28 pages long and appears to be complete on its face; in the absence of a specific directive from Plaintiff, this Court will presume that the Second Amended Complaint supercedes the First Amended Complaint.  Gregorio makes the following factual allegations:

> At all times of the alleged inc[i]dents, and at all times pertinent hereto defendants were personal[l]y involved with the violation of plaintiff['] s civil rights [and] acted under color of law of a statute ordinance regulation custom & usage.

> ### Statement of Claim Facts

> On September 4, 2009 plaintiff was brought to the Hudson County Correctional Facility and after being held in administrative segregation for 30-days he was classified and placed on C-5-East cellblock which is for high bail detainees.

On January 1, 2010 the aforementioned defendants impl[e]mented their illegal practices and policies by locking in plaintiff for 22-hours a day 5 days a week and 32 hours 2-days a week.

This illegal practice and policy impl[e]mented by the above aforementioned defendants was atypical and significant hardship upon plaintiff which was continued from Jan 1, 2010 thru October 2010 which plaintiff believes the policy ceased due to 10-3562 (JLL) which was filed July 2010.

Defendants['] acts w[ere] for the sole purpose of punishment of plaintiff due to plaintiff did not violate any rules that would subject him to such lockin experience.  Secondly even when inc[i]dent[s] happened in other parts of the jail, relating to people fighting or jumping someone they have never experienced or placed in the type of situation of confinement I have suffered in my case there was no legitim[ate] reason for me to have been subjected to such treatment and in my case there was never a hearing given to me to plead my case or understand what was happening to me.

Plaintiff was subjected to 22 hours lockin for more than 250 days continuously during this period.

During this time[] period plaintiff was denied complete outdoor exercise and fresh air recreation.

Plaintiff was subjected to this confinement to a two man room in a 12 X 8 cell with another pretrial detainee in excess of 22 hours a day 5-days a week and 32 hours 2 days a week[.]  Such violates common decency privacy personal secret and safety of plaintiff a pretrial detainee not adjudicated guilty of any crime which caused plaintiff to become depressed and frustrated which caused the deteri[o]ration of my mental health and now require[s me] to take medication twice a day which consist[s] of neurotine & see psychologist.

Plaintiff was not court ordered to this type of segregated confinement.

Plaintiff rec[ei]ved no misbehavior reports [or] discipl[i]nary infractions to warrant punitive confinement.

Plaintiff rec[ei]ved no administrative or disciplinary hearing which gave documentation as to why plaintiff was being subject to this type of unlawful illegal confinement wh[ich] is atypical and severe hardship for more than 250 days.

Plaintiff did not provoke incident.

All grievances filed relative to this issue were unanswered and all grievances filed to ombudsman were futile.

As a direct and proximate result of the acts omissions of all the aforementioned defendants plaintiff has suffered emotional distress and mental anguish as he because under direct doctors care for stress due to the extended hours of confinement which is unlawful to impose upon pretrial detainees[.]  The plaintiff has suffered mental anguish and was deprived of his due process rights under Constitution . . . .

Plaintiff was harmed by preventing of access to law library to obtain understanding of the charges against me and the right to be able to adequately in the prep[a]ration of one[']s defense.

(Dkt. 6 at 8-13) (paragraph numbers omitted).

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen an amended complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

To survive dismissal for failure to state a claim under Ashcroft v. Iqbal, 556 U.S. 662 (2009), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Iqbal, 556 U.S. at 678 (citation omitted).  Officials may not be held liable

6

under § 1983 for the unconstitutional misconduct of their subordinates.  Id. at 677.  Rather, the

facts set forth in the complaint must show that each defendant, through the person's own

individual actions, has violated the plaintiff's constitutional rights.  Id.  This Court must

disregard labels, conclusions, legal arguments, and naked assertions.  Id. at 678-81.  The

plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.

Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief," and will be

dismissed.  Id. at 678 (citations and internal quotation marks omitted); see also Santiago v.

Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); Fowler v. UPMC Shadyside, 578 F.3d

203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to

relief*.  A complaint has to "show" such an entitlement with its facts") (emphasis supplied).  The

Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally

in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

This Court construes Plaintiff's Complaint as attempting to assert the following claims:

(A) the conditions of confinement inflicted punishment without due process of law, and (B) lack

of law library access violated the First Amendment right of access to courts.  Section 1983 of

Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory . . . subjects,
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

7

42 U.S.C. § 1983.

A.  Conditions of Confinement

In the Amended Complaint, Plaintiff alleges that he was confined at HCCC as a pretrial detainee and that from January 1, 2010, through October 2010, jail officials confined him with another inmate in an 8' X 12' cell for 22 hours a day for five days a week, and 16 hours a day for two days a week, without outdoor recreation.  This Court construes these allegations as an attempt to state a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement amounted to punishment prior to an adjudication of guilt. As the Supreme Court explained,

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell v. Wolfish, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights."  Bell, 411 U.S. at 546.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  Id. at 540.  "In assessing whether the conditions are reasonably

related to the assigned purposes, [a court] must further inquire as to whether these conditions

cause [inmates] to endure [such] genuine privations and hardship over an extended period of

time, that the adverse conditions become excessive in relation to the purposes assigned to them."

Hubbard v. Taylor, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d

984, 992 (3d Cir. 1983)).

   The Third Circuit has "distilled the Supreme Court's teachings in Bell into a two-part

test.  We must ask, first, whether any legitimate purposes are served by these conditions, and

second, whether these conditions are rationally related to these purposes."  Hubbard v. Taylor,

538 F. 3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted).  Moreover, the

Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's

cruel and unusual punishments standard, contains both an objective component and a subjective

component:

> Unconstitutional punishment typically includes both objective and
> subjective components.  As the Supreme Court explained in
> Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component
> requires an inquiry into whether "the deprivation [was] sufficiently
> serious" and the subjective component asks whether "the officials
> act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . .
> The Supreme Court did not abandon this bipartite analysis in Bell,
> but rather allowed for an inference of mens rea where the
> restriction is arbitrary or purposeless, or where the restriction is
> excessive, even if it would accomplish a legitimate governmental
> objective.

Stevenson, 495 F. 3d at 68.

   Objectively, under the Due Process Clause, as well as the Eighth Amendment, prison

officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care,

and reasonable safety."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  To satisfy the objective

component, an inmate must show that he was subjected to genuine privation and hardship over an extended period of time.  See Bell, 441 U.S. at 542 (confining pretrial detainees "in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment"); Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

        In this Complaint, Plaintiff alleges that his unit was on lockdown for 10 months and, during this time, detainees had no access to outdoor recreation and they were confined for 22 hours per day for five days each week (and 16 hours per day for two days each week), with two persons in an 8' X 12' cell.  Plaintiff does not clarify his opportunity for indoor exercise.  Plaintiff's allegations do not satisfy the objective component because they do not show that Plaintiff endured genuine privations and hardship over an extended period of time.  See Fortune v. Hamberger, 379 Fed. App'x 116, 122 (3d Cir. 2010) ("Even a minimal provision of time for exercise and recreation may satisfy constitutional requirements"); Gattis v. Phelps, 344 Fed. App'x 801, 805 (3d Cir. 2009) ("Gattis' alleged harm - that his exercise was limited to three days per week and that he was not guaranteed outdoor exercise at all times - was insufficiently serious to implicate the Eighth Amendment"); Hubbard, 538 F. 3d at 235 (holding that triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not subjected to genuine privations and hardship over an extended period of time"); Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (immigration detainee's confinement in

maximum security did not violate due process); <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1028029 (3d Cir. 1988) (In considering an alleged deprivation of adequate exercise, courts must consider:  (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of the confinement).

Nor do Gregorio's allegations satisfy <u>Iqbal</u>'s plausibility standard with respect to the objective component.  He complains that the high bail pretrial detainee unit on which he was housed was on lockdown for 10 months, during which time detainees had no outdoor recreation. Although his allegations are consistent with a finding that the lockdown and denial of access to outdoor recreation were arbitrary or even punitive, Plaintiff's allegations are also consistent with restrictions that constitute a rational response by jail officials to an incident or other factual circumstances warranting a need for heightened security during this period.[1]  Plaintiff's allegations do not satisfy the objective component of a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment.  <u>Id.</u>

As to the subjective component, Plaintiff asserts that "defendants act[ion]s w[ere] for the sole purpose of punishment of plaintiff due to plaintiff did not violate any rules." (Dkt. 6 at 10.) As this allegation is conclusory, and Gregorio does not substantiate his conclusion with facts, <u>Iqbal</u> requires this Court do disregard this allegation.[2]  Moreover, Plaintiff's non-

---

[1] A court must recognize that "judgments regarding prison security 'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" <u>Turner v. Safley</u>, 482 U.S. 78, 86 (1987) (quoting <u>Pell v. Procunier</u>, 417 U.S. 817, 827 (1974)).

[2] "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

(continued...)

conclusory allegations do not satisfy the subjective component of a conditions of confinement claim under the Due Process Clause.  First, an individual defendant in a civil rights action must participate in the alleged wrongdoing and, aside from the conclusory allegation that "defendants were personal[l]y involved with the violation of plaintiff[']s civil rights (Dkt. 6 at 8), Gregorio does not assert facts supporting the conclusion that each (or any) named defendant participated in the alleged wrongdoing, i.e., arbitrarily placing detainees on lockdown and arbitrarily denying outdoor recreation for 10 months.  See Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").  Second, Gregorio does not assert facts showing that each named individual defendant was deliberately indifferent to his health or safety.  To establish deliberate indifference, a plaintiff must set forth facts "show[ing] that the official was subjectively aware" of the allegedly substandard conditions.  See Farmer v. Brennan, 511 U.S. 825, 829 (1994).  Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

---

[2](...continued)
While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations . . . .  Iqbal, 556 U.S. at 679.  For example, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the plaintiffs' assertion that the defendants had entered into a conspiracy to prevent competition was a "legal conclusion" that was "not entitled to the assumption of truth.  Had the Court simply credited the allegation of a conspiracy, the plaintiffs would have stated a claim for relief and been entitled to proceed perforce."  Iqbal, 556 U.S. at 680 (citation omitted).

12

In addition, Plaintiff's allegations do not satisfy <u>Iqbal</u>'s plausibility standard with respect to the subjective component, since the allegations are consistent with the conclusion that defendants reasonably responded to a security concern.  <u>See</u> n.1.  Because the Second Amended Complaint makes no non-conclusory factual allegations showing the deliberate indifference of each named defendant, and because vicarious liability does not apply under § 1983, the Second Amended Complaint fails to cure the defects found in the Complaint.  As this is Plaintiff's second opportunity to assert non-conclusory allegations, leave to amend another time would be futile.

B.  Access to Courts

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts, but that right does not include a freestanding right to a minimum amount of time in a law library.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996); <u>Monroe v. Beard</u>, 536 F. 3d 198, 205 (3d Cir.), <u>cert. denied</u>, <u>Stover v. Beard</u>, 129 S. Ct. 1647 (2008).  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit."  <u>Monroe</u> at 205 (quoting <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002)).  To establish standing, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  <u>Monroe</u> at 205-206 (quoting <u>Christopher</u> at 416-17).

The sole reference in the Second Amended Complaint to a First Amendment access to courts claim is this sentence:  "Plaintiff was harmed by preventing of access to law library to obtain understanding of the charges against me and the right to be able to adequately in the prep[a]ration of one[']s defense."  (Dkt. 6 at 13.)  Gregorio provides no facts showing that the denial of access to a law library caused actual injury to his pursuit of a non-frivolous legal claim (and, in any event, this would be difficult to show in a criminal proceeding where the state provides counsel for defendants).  Nor does he describe the "'lost remedy.'"  Monroe at 205-206 (quoting Christopher at 416-17).  Accordingly, this Court will dismiss the access to courts claim for failure to state a claim upon which relief may be granted.  As this is Gregorio's second opportunity to assert non-conclusory allegations, leave to amend another time would be futile.

C.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  Growth Horizons, Inc., 983 F.2d at 1284 (quoting

14

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  United Mine Workers v. Gibbs, 383 U.S. at 726; Growth Horizons, Inc., 983 F.2d at 1284-1285.  In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction, this Court declines at this juncture to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## V.  CONCLUSION

Based on the foregoing, dismiss the federal claims and decline to exercise supplemental jurisdiction.

s/William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

Dated: March 20, 2013

15